1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7   GREGORY E. WALKER,                              Case No. 2: 14-cv-00480-JCM-PAL

8                                    Plaintiff,

                                                    **REPORT OF FINDINGS AND**
9        v.                                         **RECOMMENDATION**

10   CAROLYN W. COLVIN, Acting                       (Mot. To Remand – Dkt. #15)
     Commissioner of Social Security,               (Cross-Mot. Summ. J. – Dkt. #18)
11

12                                    Defendant.

13            This matter involves Plaintiff Gregory E. Walker's appeal and request for judicial review

14   of the Acting Commissioner of the Social Security Administration ("SSA"), Defendant Carolyn

15   W. Colvin's final decision denying his claim for disability insurance benefits under Title II of the

16   Social Security Act (the "Act"), 42 U.S.C. §§ 401–33.

17                                        **BACKGROUND**

18            Mr. Walker alleges disability due to his (1) depression, (2) post-traumatic stress disorder,

19   and (3) anxiety.  AR 168 (Disability Report – Adult).[1]  On January 19, 2011, he protectively

20   filed an application for disability insurance benefits, alleging that he became disabled on January

21   1, 2009.  AR 24.  The SSA denied Walker's application initially and on reconsideration.  AR 24.

22   An administrative law judge ("ALJ") held a hearing on November 6, 2012, where Mr. Walker

23   appeared with counsel.  AR 24.

24            During the hearing, Mr. Walker's counsel asserted that Walker had supporting medical

25   records from his treating physician and when viewed along with Walker's suicide attempts and

26   diagnosis of bipolar disorder, the ALJ should find that Walker is disabled.  AR 74–75.  The ALJ

27

28   ---
     [1] AR refers to the Administrative Record, a certified copy of which was delivered to the undersigned upon the
     Commissioner's filing of her Answer (Dkt. #11).

accepted testimony from Mr. Walker, AR 54–70, and a vocational expert, AR 70–74. The ALJ asked the vocational expert a hypothetical question about whether jobs exist in the national economy for an individual with Walker's age, education, work experience, and residual functional capacity. AR 71. The vocational expert testified that the individual would be able to perform the requirements of three representative jobs: hand packager, dishwasher, and janitor. AR 71–72.

In a decision dated November 30, 2012, the ALJ found that Mr. Walker was not disabled. AR 24–36. Walker requested review of the ALJ's decision by the Appeals Council, but the ALJ's decision became final when the Appeals Council denied review on January 31, 2014. AR 2–4. On April 1, 2014, Mr. Walker filed Complaint (Dkt. #1) in federal court, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Commissioner filed her Answer (Dkt. #11) on June 10, 2014. Walker filed a Motion to Remand (Dkt. #15), and the Commissioner filed a Response and Cross-Motion for Summary Judgment (Dkt. #18). The Court has considered the Motion and Request for Judicial Notice (Dkt. #16), the Response and Cross-Motion, and Walker's Reply (Dkt. #19).

## DISCUSSION

### I.   APPLICABLE LAW

#### A.     Judicial Review of Disability Determination

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). The statute provides that after the Commissioner has held a hearing and rendered a final decision, a disability claimant may seek review of that decision by filing a civil lawsuit in a federal district court in the judicial district where the disability claimant lives. 42 U.S.C. § 405(g). The statute also provides that the district court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). But the Commissioner's

1    findings may be set aside if they are based on legal error or not supported by substantial

2    evidence.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v.*

3    *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as

4    "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

5    reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d

6    1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

7    2005).   In determining whether the Commissioner's findings are supported by substantial

8    evidence, a court "must consider the entire record as a whole and may not affirm simply by

9    isolating a 'specific quantum of supporting evidence'."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160

10   (9th Cir. 2014) (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

11          Under the substantial evidence test, a court must uphold the Commissioner's findings if

12   they are supported by inferences reasonably drawn from the record.  *Batson v. Comm'r Soc. Sec.*

13   *Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003).  When the evidence will support more than one

14   rational interpretation, a court must defer to the Commissioner's interpretation.   *Burch v.*

15   *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Consequently, the issue before a court is not

16   whether the Commissioner could reasonably have reached a different conclusion, but whether

17   the final decision is supported by substantial evidence.

18          It is incumbent upon an ALJ to make specific findings so that a court does not speculate

19   as to the basis of the findings when determining if the Commissioner's decision is supported by

20   substantial evidence.  *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).  Mere cursory

21   findings of fact without explicit statements about what portions of the evidence were accepted or

22   rejected are not sufficient.  *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).  An ALJ's

23   findings should be comprehensive, analytical, and include a statement explaining the "factual

24   foundations on which the ultimate factual conclusions are based."  *Id. See also Vincent v.*

25   *Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (an ALJ need not discuss all the evidence in

26   the record, but must explain why significant probative evidence has been rejected).

27   / / /

28   / / /

1

### B.     Disability Evaluation Process

2     A claimant has the initial burden of proving disability.  *Roberts v. Shalala*, 66 F.3d 179,

3   182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in

4   any substantial gainful activity by reason of any medically determinable physical or mental

5   impairment which can be expected . . . to last for a continuous period of not less than 12

6   months."  42 U.S.C. § 423(d)(1)(A).  A claimant must provide specific medical evidence to

7   support his or her claim of disability.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).  If a

8   claimant establishes an inability to perform his or her prior work, the burden shifts to the

9   Commissioner to show that the claimant can perform other substantial gainful work that exists in

10   the national economy.  *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (noting that a

11   claimant bears the burden of proof until the final step in the evaluation process).

12   ## II.     THE ALJ'S DECISION

13     An ALJ follows a five-step sequential evaluation process in determining whether an

14   claimant is disabled.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If at

15   any step an ALJ makes a finding of disability or non-disability, no further evaluation is required.

16   20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

17     Here, the ALJ followed the five-step sequential evaluation process and issued an

18   unfavorable decision on November 30, 2012 (the "Decision").  AR 24–36.  Mr. Walker does not

19   challenge the ALJ's findings at steps one through three, but asserts legal error at steps four and

20   five.  In addition, the parties stipulate that the ALJ fairly and accurately summarized the

21   evidence and testimony of record in the Decision.

22   ### A.     Step One

23     The first step of the disability evaluation requires an ALJ to determine whether the

24   claimant is currently engaging in substantial gainful activity ("SGA").     20 C.F.R.

25   §§ 404.1520(b), 416.920(b).  SGA is defined as work activity that is both substantial and gainful;

26   it involves doing significant physical or mental activities, usually for pay or profit.  20 C.F.R.

27   §§ 404.1572(a)–(b), 416.972(a)–(b).  If the claimant is currently engaging in SGA, then a finding

28

1    of not disabled is made.  If the claimant is not engaging in SGA, then the analysis proceeds to the

2    second step.

3         At step one in the Decision, the ALJ found that Mr. Walker had not engaged in SGA

4    since January 1, 2019, the alleged onset date.  AR 26.

5         **B.    Step Two**

6         The second step of the disability evaluation addresses whether a claimant has a

7    medically-determinable impairment that is severe or a combination of impairments that

8    significantly limits him or her from performing basic work activities.  20 C.F.R. §§ 404.1520(c),

9    416.920(c).  An impairment or combination of impairments is not severe when medical and other

10   evidence establish only a slight abnormality or a combination of slight abnormalities that would

11   have no more than a minimal effect on the claimant's ability to work.  20 C.F.R. §§ 404.1521,

12   416.921; Social Security Rulings ("SSRs") 85-28, 96-3p, 96-4p.[2]  If a claimant does not have a

13   severe medically-determinable impairment or combination of impairments, then an ALJ will

14   make a finding that a claimant is not disabled.  If a claimant has a severe medically-determinable

15   impairment or combination of impairments, then an ALJ's analysis proceeds to the third step.

16        At step two in the Decision, the ALJ found that Mr. Walker has two severe impairments:

17   (1) bipolar affective disorder and (2) personality disorder, not otherwise specified.  AR 26 ¶ 3.

18   In making his findings at step two, the ALJ specifically considered all of Mr. Walker's medically

19   determinable impairments, including several non-severe impairments.  AR 27.

20        **C.    Step Three**

21        Step three of the disability evaluation requires an ALJ to determine whether a claimant's

22   impairments or combination of impairments meet or medically equal the criteria of an

23   impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is commonly referred to

24   as the "Listings."  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and

25   416.826.  If a claimant's impairment or combination of impairments meet or equal the criteria of

---

27   [2] SSRs are the SSA's official interpretations of the Act and its regulations.  *See Bray v. Comm'r Soc. Sec.
     Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1).  They are entitled to
28   some deference as long as they are consistent with the Act and regulations.  *See Bray*, 554 F. 3d at 1223
     (finding ALJ erred in disregarding SSR 85-41).

the Listings and meet the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then an ALJ makes a finding of disability.  20 C.F.R. §§ 404.1520(h), 416.920(h).  If a claimant's impairment or combination of impairments does not meet or equal the criteria of the Listings or meet the duration requirement, then the analysis proceeds to the next step.

When the SSA evaluates the severity of mental impairments, 20 C.F.R. § 404.1520a requires the use of a "special technique" to evaluate four broad functional areas known as the "Paragraph B Criteria" in Listing 12.00C of the Listing of Impairments set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Id*.  *See also* 20 C.F.R. § 1520a (explaining the psychiatric review technique); SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996) (noting that application of the technique is documented on a Psychiatric Review Technique Form).

Here, the ALJ found that the severity of Mr. Walker's mental impairments, "considered singly and in combination, do not meet or medically equal the criteria" of listings 12.04 (affective disorders) and 12.08 (personality disorders). AR 27.  The ALJ specifically evaluated the Paragraph B Criteria and concluded that the greater weight of the evidence showed Walker suffered: (i) mild limitation in activities of daily living; (ii) moderate difficulties in maintaining social functioning; (iii) moderate difficulties in maintaining concentration, persistence, or pace; and (iv) no episodes of decompensation of extended duration.  AR 27.  *See also* AR 248–58 (Psychiatric Review Technique Form completed by Mark Richman, Psy.D.).    Thus, the Paragraph B criteria were not satisfied.

The ALJ also considered whether the "Paragraph C" criteria of Listing 12.04 were satisfied.[3]   The Paragraph C criteria require a medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be

_____

[3]  Listing 12.08 does not provide Paragraph C criteria for personality disorders.

predicted to cause the individual to decompensate; or (3) current history of one or more years in ability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement. *See* 20 C.F.R. § 404, Sub pt. P, App. 1, §§ 12.04(C). The ALJ found that the record lacked evidence of Paragraph C criteria of Listing 12.04.

At step three, the ALJ concluded that Mr. Walker did not have an impairment or combination of impairments that met or medically equaled one of the impairments described in the Listings. *Id*.

### D.     Step Four – Mr. Walker's RFC

The fourth step of the disability evaluation requires an ALJ to determine whether a claimant has the residual functional capacity ("RFC") to perform his past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). To answer this question, an ALJ must first determine a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.929; SSRs 96-4p, 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of a claimant's statements based on a consideration of the entire case record. An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, and 06-3p.

After considering the entire record, the ALJ concluded that Mr. Walker had the RFC to perform a full range of work at all exertional levels, but stated one nonexertional limitation: Walker "is limited to performing unskilled work with brief and superficial interactions with the public." AR 28. In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence." *Id*. He also considered opinion evidence. *Id*. Although the

ALJ found that Mr. Walker's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ determined that Walker's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC Assessment.  AR 28–30.

The Court notes that Mr. Walker does not challenge: (1) the ALJ's adverse credibility determination; (2) the little weight the ALJ assigned to the opinions of: (a) his treating physician, Priscilla M. Cusi, M.D., (b) the examining and reviewing doctors, Fabella Hicks, Ph.D., and Mark Richman, Ph.D., or (c) the lay witnesses' statements; or (3) the ALJ's findings about the medical evidence.  *See* Pl.'s Mot. to Remand (Dkt. #15), Reply (Dkt. #19).  Instead, Mr. Walker asserts that the ALJ erred by failing to explain his departure from the opinions of psychological consultative examiner, John Paglini, Psy.D., and state agency review physician, Sally Skewis, Ph.D., and concluding that Mr. Walker's RFC was less restrictive than both opined.

Insofar as Mr. Walker alleged symptoms and functional limitations that would preclude him from performing the activities described in his RFC, the ALJ found that Walker's statements were not supported by the objective findings of the medical record, inconsistent with the medical opinion evidence, and not credible.  AR 28–29.  For example, Mr. Walker testified at the hearing that he suffered from several impairments that prevented him from being able to work, including depression, anxiety, bipolar disorder, and chronic fatigue syndrome.  AR 53–70.  Because of his mental health impairments, Mr. Walker testified he had difficulty focusing and concentrating, and suffered from mood swings, fatigue, sleepiness, and insomnia.  *Id.*  He further testified that he spent four to six hours a day resting due to his fatigue, AR 63, and would be off task 70 to 80 percent of the day, AR 65.  He reported a history of suicidal ideations and multiple suicide attempts, the most recent occurring in 2011.  AR 64–65.

Mr. Walker's treatment records show that he received conservative treatment of prescription medication for his various diagnosed forms of affective and personality disorders.  AR 263–77, 284–333, 349–99.  Although he was hospitalized in September 2011 for suicidal ideations, Mr. Walker's "treatment was limited to conservative methods of prescribed medications, education, and supportive therapy on an as needed basis."  AR 30; *see also*

AR 263–77.  Some treatment notes indicate he was at risk for suicide, his mood was depressed, his speech was pressured, and his thought content focuses on his mood fluctuations.  *See, e.g.*, 264, 266, 289, 319, 375, 377.  However, Mr. Walker's mental status evaluations throughout his treatment notes show normal findings in most areas and the ALJ, therefore, found that the notes do not support Walker's allegations of disability.  AR 30; *see also, e.g.*, 267, 284, 294, 297, 304, 308, 313, 323, 329, 349, 351, 367, 375, 378, 380, 391, 396.  The treatment notes also demonstrate that when Mr. Walker complied with treatment, "he reported improvement in his symptoms and noted his medications were helping.  AR 241, 307, 312.

The treatment notes did not support Mr. Walker's claims that his condition had significantly deteriorated since his initial function report, which reported activities of daily living inconsistent with Walker's claims.  *See* AR 29, *compare* AR 182–89 (Function Report dated Apr. 26, 2011) *with* AR 209–16 (Function Report dated Jan. 18, 2012).  Specifically, in April 2011, Mr. Walker admitted he was able to attend to his personal care without difficulty, prepare his own meals, use public transportation, go shopping, handle a checkbook/money orders, and attend church.  AR 183–88; *accord* AR 241–47 (Psychological Evaluation by Dr. Verna Fabella-Hicks on June 28, 2011).  However, in January 2012, Walker claimed he was no longer able to attend his personal care without reminders, cook, go out alone, use public transportation, go shopping, mange his own finances, or attend church.  AR 209–216.  Despite his purported deteriorated state, Mr. Walker informed his treating physicians that he was able to attend to his activities of daily lying independently and babysit his grandchildren, *see, e.g.*, AR 296, 321, and Walker testified at the hearing that he was able to use public transportation.  AR 58.

Additionally, the ALJ noted that treatment records indicated that Mr. Walker missed appointments, was inconsistent in following his treatment regimen, and had been off his medications for weeks.  AR 288, 304, 307, 316–17, 394.

Besides Mr. Walker's medical records, the ALJ considered the opinions of a psychological consultative examiner and a state agency review physician.  The ALJ relied on the results of Walker's psychological evaluation with John Paglini, Psy.D.  AR 334–43 (Consultative Examination Report).  Dr. Paglini reported that Walker was oriented with intact

abstraction, had no difficulty expressing himself, and his speech was normal; however, the doctor noted that Walker did not put forth full effort and questioned whether he was malingering. 338–39.  Dr. Paglini specifically reported that, although he graduated from high school and earned an associate's degree, Walker was unable to complete the majority of the mental status evaluation.  AR 338–39.  Mr. Walker was noted as hostile during his evaluation, he alleged he experienced hallucinations, he indicated he did not know "something that orbited the earth," what happened to Noah in the Bible, or where Hurricane Katrina occurred.  AR 339.  Because Walker did not make adequate effort on the tasks presented to him, Dr. Paglini reported that the results of the evaluation were "not valid," AR 341, and cautioned that the results "should be considered with extreme caution in regards to his current level of cognitive abilities."  AR 339.

Despite the unreliable nature of the testing, Dr. Paglini opined that Mr. Walker "appeared to be cognitively impaired" with respect to understanding, remembering, and carrying out complex and detailed instructions; however, his ability to maintain concentration and attention sufficient to carry out complex and detailed tasks was only "slightly impaired."  AR 340–41.  The doctor further opined that Walker was slightly impaired in his ability to interact appropriately with supervisors, co-workers, and the general public, and "cognitively intact" with respect to his "ability to understand, remember, and carryout simple one or two step instructions."  AR 340.  Mr. Walker's ability to "maintain concentration and attention sufficient to carry out complex and detailed instructions" was judged as "slightly impaired," and his ability to "carry out detailed simple instructions" was also deemed as "cognitively intact."  AR 341.

The ALJ also considered the findings of the state agency review physician, Sally Skewis, Ph.D., who handled Mr. Walker's claim at the reconsideration stage.  AR 78–91 (Disability Determination Explanation).  After reviewing and summarizing the medical record, including Dr. Paglini's report, Dr. Skewis concluded that Walker was capable of making "a vocational adjustment to other simple work with limited public contact."  AR 83. With regard to the Paragraph B criteria, Dr. Skewis noted that Walker's limitations were: (i) mild in activities of daily living; (ii) moderate for difficulties in maintaining social functioning; (iii) moderate for difficulties in maintaining concentration, persistence, or pace; and (iv) none for episodes of

decompensation of extended duration.  AR 83–84.  Regarding his limitations in understanding and memory, the doctor explained that Walker "is able to understand, remember, and carry out simple 1 and 2 step tasks."  AR 87.  Noting that Mr. Walker did not put forth his best effort during Dr. Paglini's evaluation, Dr. Skewis found that Walker was only "partially credible." AR 86.  Based on the inconsistent reporting between Walker's (i) function report denying any activity, (ii) his Veterans Administration progress notes, (iii) the daily activities he reported to Dr. Paglini, and (iv) the poor effort during Dr. Paglini's examination, Dr. Skewis opined that Walker was "able to sustain simple tasks with adequate adaptive fx and minimal social contact." AR 85.

### E.      Step Four – Mr. Walker's Ability to Perform his PRW

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform his PRW.  20 C.F.R. §§ 404.1520(f), 416.920(f).  PRW means work performed either as a claimant actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years prior to the date that disability must be established.  In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965.  If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

At step four in the Decision, the ALJ concluded that Mr. Walker was not capable of performing his PRW as a respiratory therapist and pharmacy technician.  AR 34, ¶ 6.  The Dictionary of Occupational Titles ("DOT") describes Mr. Walker's PRW as a respiratory therapist at DOT 076.631-014, and pharmacy technician at DOT 074.382-010.  AR 34.

### F.      Step Five

Step five of the disability evaluation requires an ALJ to determine whether a claimant is able to do any other work considering his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If he or she can do other work, then an ALJ makes a finding that a claimant is not disabled.  The Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, commonly known as the "Grids," aid the ALJ in the step five analysis for cases that

cannot be evaluated on medical considerations alone.  The Grids consist of three "Tables" that each represents a different RFC: sedentary, light, and medium work.  *Id*.  Each Table also presents the vocational factors Congress has identified as important: age, education, and work experience.  For individuals whose characteristics match the criteria of a particular Grid rule, the rule "directs a conclusion as to whether the individual is or is not disabled."  *Id*.  The Grids were developed to recognize that a claimant's age significantly restricts one's ability to learn, adapt, and adjust to a new job in a new working environment.  *Calvin v. Heckler*, 782 F.2d 802, 805–06 (9th Cir. 1986).  Thus, as claimants grow older, they are more likely to be found disabled in each exertional category, even if they have the physical strength and mental ability to perform some type of job.  *See* Soc. Sec. Disability Law & Pro. § 3:79 (2015).

Although a claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 795 F.3d 1177, 1182 (9th Cir. 2015).  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do.  *Yuckert*, 482 U.S. at 141–42; *see also Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (citing 42 U.S.C. § 423(d)(2)(A)).

At step five in the Decision, the ALJ determined that Mr. Walker could perform jobs that exist in significant numbers in the national economy, considering his age, education, work experience, and RFC.  AR 35.  On the alleged date of disability, he was 56 years old, which categorized him as an individual of advanced age.  AR 34, ¶ 7.  Mr. Walker has at least a high school education and is able to communicate in English.  AR 34, ¶ 8.  The transferability of his job skills was not material to the ALJ's determination of disability because "using the Medical-Vocational Rules as a framework" supported a finding that Walker was not disabled.  AR 35, ¶ 9.

The ALJ found that Mr. Walker had the ability to perform unskilled work at "all exertional levels," but his ability was "compromised by nonexertional limitations."  AR 35.  To determine the extent to which Walker's limitations eroded the occupational base of unskilled work, the ALJ asked a vocational expert, Robin Generaux, Ph.D., whether jobs exist in the national economy for an individual with Walker's age, education, work experience, and RFC.

AR 35, 71.  Dr. Generaux testified that the individual would be able to perform the requirements of three representative jobs: hand packager, dishwasher, and janitor.  AR 35, 71–72.  The ALJ found that each of these is an "unskilled occupation."  AR 35.  The hand packager job, DOT 559.687-074, had 1,949 positions in Nevada and 309,746 positions in the national economy.  AR 35, 71–72; *see also* Pl.'s Request for Judicial Notice (Dkt. #16).  The dishwasher (kitchen helper) job, DOT 318.687-010, had 2,512 positions in Nevada and 139,566 positions nationally.  *Id*.  The janitor job, DOT 382.664-010, had 1,556 positions in Nevada and 130,128 positions nationally.  *Id*.

Pursuant to SSR 00-4p, 65 Fed. Reg. 75759 (Dec. 4, 2000), the ALJ found that Dr. Generaux's testimony was consistent with the information contained in the DOT.  AR 35.  Considering Mr. Walker's age, education, work experience, and RFC, the ALJ determined that Walker could perform jobs that exist in significant numbers in the national economy.  *Id*.  A finding of "not disabled" was, therefore, appropriate under the framework of Section 204.00 in the Medical Vocational Guidelines.  *Id*.

## III.    THE PARTIES' POSITIONS ON APPEAL

### A.    Mr. Walker's Position

Mr. Walker seeks reversal and remand of the ALJ's decision on the grounds that the ALJ erred by failing to explain his departure from the opinions of Dr. Paglini and Dr. Skewis.  Pl.'s Mot. (Dkt. #15) at 7–10.  He argues that the medical opinions from these examining sources demonstrate that he has a more restrictive RFC than what the ALJ found in the Decision.  The ALJ concluded that Walker had the RFC to perform a full range of work at all exertional levels, but "is limited to performing unskilled work with brief and superficial interactions with the public."  AR 28.  Although the ALJ gave great weight to both Drs. Paglini and Skewis, Mr. Walker contends that the ALJ's finding regarding Walker's nonexertional limitation does not adequately account for his limitations because both Drs. Paglini and Skewis found that he "could only perform work involving one to two-step tasks."  Pl.'s Mot. (Dkt. #15) at 9:4.  Walker argues that when Dr. Skewis made her finding regarding Walker's one-to-two step limitation at the reconsideration stage, "this type and quality of work represented the most that Gregory Walker

13

could do, as a matter of law." *See* Reply (Dkt. #19). Thus, the ALJ was bound to her legal finding in the Decision.

According to Mr. Walker, Dr. Skewis' finding equates to reasoning level 1: "[t]he range of unskilled work contains the subset of simple work which in turn contains the further subset of simple work which in turn contains the further subset of one- or two-step instructions. *Id*. at 9:11–13. The occupations identified by Dr. Generaux exceed a Reasoning Level 1: hand packager (Level 2), dishwasher (Level 2), and janitor (Level 3); therefore, the ALJ erroneously found that Walker could perform jobs that exist in significant numbers in the national economy.

### B.    The Commissioner's Position

The Commissioner seeks affirmance of the ALJ's Decision asserting that the ALJ properly assessed Mr. Walker's RFC and determined that he is not disabled. Resp. & Cross-Mot. (Dkt. #18). The Commissioner maintains that the ALJ's RFC finding is supported by substantial evidence and free from legal error. Walker does not challenge the ALJ's adverse credibility determination or the weight afforded to his treating physician or lay witnesses; rather, Walker wanted the ALJ to limit him to performing only work involving one to two step instructions. *Id*. at 4. However, Mr. Walker's position cherry-picks from Drs. Paglini and Skewis' opinions, and their complete opinions demonstrate that they did not intend to limit Walker to only one- and two step tasks. *Id*. at 5 (citing AR 78–90, 334–43). For example, Dr. Skewis' ratings of Walker's sustained concentration and persistence limitations and social interaction limitations revealed nothing remarkable. *Id*. at 6 (citing AR 87–88). She specifically opined that Mr. Walker has a "[Mental] RFC with the ability to do simple work with limited public contact." AR 83. Additionally, Dr. Paglini's findings stated that Walker's "ability to maintain concentration and attention sufficient to carry out complex and detailed instructions" was only "slightly impaired," and "ability to carry out detailed simple instructions" was "cognitively intact." AR 341. Because the ALJ did not limit his RFC to one- to two-step tasks, "the ALJ properly concluded Mr. Walker could make a successful adjustment to other work such as hand packager and dishwasher given Mr. Walker's age, education, work experience, and the RFC for unskilled work," since both occupations are consistent with the SSA's definition of

14

unskilled work.  Resp. & Cross-Mot. (Dkt. #18) at 10 (citing AR 35).  Because the ALJ fully accommodated Drs. Paglini and Skewis' opinions, the Commissioner urges the court to reject Walker's unsupported assertions of error.

**ANALYSIS AND FINDINGS**

Reviewing the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision is supported by substantial evidence, and the ALJ did not commit legal error.

**I.    THE ALJ'S RFC FINDINGS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE**

The Court finds that the ALJ properly evaluated the medical evidence of record in assessing Mr. Walker's RFC.  Walker's brief does not assert that the ALJ failed to consider any particular medical evidence in the Decision.  Mr. Walker does not challenge the weight the ALJ afforded to the opinions of any of his physicians, consultative examiners, the state agency review psychologist, or his lay witnesses.  Instead, Walker argues that the ALJ should have found further restrictions on his RFC because the opinions of Drs. Paglini and Skewis significantly limited the occupational base for the full range of unskilled work.

First, the record reveals that the doctors did not opine that Mr. Walker was limited to work consisting of one to two step instructions.  Walker's contention is based on a single sentence in each of those opinions.  Dr. Skewis stated that Mr. Walker "is able to understand, remember, and carry out simple 1 and 2 step tasks."  AR 87.  However, she also found that Walker had a "[Mental] RFC with the ability to do simple work with limited public contact." AR 83.  Dr. Paglini stated, "Mr. Walker's overall ability to understand, remember and carry out simple one or two step instructions appears to be cognitively intact."  AR 340.  However, the doctor also found that Walker's "ability to maintain concentration and attention sufficient to carry out complex and detailed instructions" was only "slightly impaired," and "ability to carry out detailed simple instructions" was "cognitively intact."  AR 341.  Both doctors also found that Walker's credibility was questionable.  Dr. Paglini specifically noted that Walker "did not appear to put forth much effort into the evaluation."  AR 341.  Viewing the doctor's findings as a whole,

their opinions are consistent with the ALJ's RFC findings, and the ALJ explained his findings to the extent they departed from the doctors' findings.

Second, even if Dr. Skewis had limited Walker's RFC to one- to two-step tasks at the reconsideration stage, the ALJ would not have been bound by such a finding as Walker suggests. When a claimant requests a hearing before an ALJ after a denial of his disability claim initially and upon reconsideration, the ALJ will conduct the hearing *de novo*. *Boettcher v. Sec'y of Health & Human Servs.*, 759 F.2d 719, 722–23 (9th Cir. 1985); *see also* 20 C.F.R. § 404.946 ("The issues before the administrative law judge include *all the issues* brought out in the initial, reconsidered or revised determination that were not decided entirely in your favor.")  In addition, the record shows that the SSA informed Mr. Walker of the ALJ's de novo review: "At your hearing, …[t]he ALJ will consider the issue(s) you raise, the evidence now in your file, and any additional evidence you provide.  *The ALJ may also consider other issues, including issues that were decided in your favor in the decision you appealed*."   AR 105 (Request for Hearing Acknowledgement Letter) (emphasis added).  This contention lacks merit.

Third, to the extent there were conflicting opinions and testimony regarding the degree of Mr. Walker's nonexertional limitations, it was the ALJ's duty to resolve those conflicts.  For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress has deferred to agency expertise and, for the sake of uniformity, has minimized the opportunity for reviewing courts to substitute their discretion for that of the agency. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)).  Consequently, it is the ALJ's duty "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (citing 42 U.S.C. § 405(g) (directing that the Commissioner's findings shall be conclusive as to any fact supported by substantial evidence); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Here, the ALJ's findings regarding Mr. Walker's nonexertional limitations are supported by the opinions of Drs. Paglini and Skewis.  It was the ALJ's job to consider the doctors' statements about Walker's ability to perform one-to-two step instructions and resolve any

16

conflicts it presented with the rest of their findings.  If the record will support more than one rational interpretation, the Court must uphold the Commissioner's interpretation.  *See Burch*, 400 F.3d at 679.  The ALJ's findings are amply supported by the record and inferences reasonably drawn from the record.  The Decision is supported by substantial evidence.  *See Batson*, 359 F.3d at 1193.

Reviewing the record as a whole, the Court finds that the ALJ did not err in his assessment that Mr. Walker has the RFC to perform unskilled work subject to certain limits.  The ALJ properly relied upon Medical Vocational Rule 204.00, which directed a finding that Walker is not disabled.

## II.   THE ALJ PROPERLY RELIED UPON THE TESTIMONY OF THE VOCATIONAL EXPERT

Mr. Walker asserts that a one-to-two step, unskilled work limitation restrict him to Reasoning Level 1 occupations.  As addressed above, the record supports the ALJ's conclusion that Mr. Walker was not limited to one- to two-step tasks.  To the extent Mr. Walker argues his RFC for "unskilled" work limits him to occupations within Reasoning Level 1, he simply wrong.

The DOT is the SSA's "primary source of reliable job information regarding jobs that exist in the national economy."  *Zavalin v. Colvin*, 778 F.3d 842, 845–46 (9th Cir. 2015) (quotation omitted); *see also* 20 C.F.R. §§ 416.969, 416.966(d)(1).   "The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ('GED') levels; that is, 'aspects of education (formal and informal) ... required of the worker for satisfactory job performance'."  *Zavalin*, 778 F.3d at 846 (quoting DOT, App. C, 1991 WL 688702 (4th ed. 1991)).  The DOT describes three types of GED Levels for reasoning, mathematical, and language development.  *See* DOT, App. C.  Reasoning development "includes the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)."  *Zavalin*, 778 F.3d at 846 (citing DOT, App. C).

Levels 1 to 2 are relevant to Mr. Walker's RFC and are defined as follows:

LEVEL 2
Apply commonsense understanding to carry out detailed but uninvolved written

17

1

or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

2

LEVEL 1

3

Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

4

5

DOT, App. C.  In addition, the SSA defines unskilled work as "work which needs little or no

6

judgment to do *simple duties* that can be learned on the job in a short period of time."  20 C.F.R.

7

§ 404.1568(a) (emphasis added).  Semi-skilled work is "work which needs some skills but does

8

not require doing the more complex work duties" and may require alertness and close attention.

9

§ 404.1568(b).

10

    The Ninth Circuit recently held that a specific RFC limitation to "one to two step tasks,"

11

is an apparent conflict with the demands of Level 2 reasoning, which requires a person to

12

"[a]pply commonsense understanding to carry out detailed but uninvolved written or oral

13

instructions."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (finding

14

that "[o]nly tasks with more than one or two steps would require 'detailed' instructions"

15

consistent with Level 2 jobs).  However, where there is no explicit limitation to one- to two-step

16

tasks, the Ninth Circuit has favorably citied unpublished decisions within this circuit and

17

opinions from other circuits concluding that an RFC limitation to "simple" or "repetitive" tasks

18

is consistent with Level Two reasoning.  *Id.* at 1004 n.6 (citing *Moore v. Astrue*, 623 F.3d 599,

19

604 (8th Cir. 2010); *Abrew v. Astrue*, 303 Fed. Appx. 567, 569 (9th Cir. 2008) (finding no

20

conflict between the ALJ's determination that a claimant could comply with "only simple tasks"

21

and the expert's testimony claimant could do Level 2 jobs) (unpublished); *Lara v. Astrue*, 305

22

Fed. Appx. 324, 326 (9th Cir. 2008) (finding that "someone able to perform simple, repetitive

23

tasks is capable of doing work requiring more rigor and sophistication" than a Level 1 job, *i.e.*

24

Level 2 jobs.) (unpublished); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting

25

that Level 2 "appears more consistent" than Level 3 for a claimant limited to simple, routine

26

tasks); *Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3d Cir. 2004) (unpublished)).

27

    Here, Mr. Walker contends that he is limited to jobs with a Reasoning Level 1.  However,

28

Ninth Circuit case law holds otherwise since Walker's RFC was not specifically limited to one-

to two-step tasks.  *See id.*  Dr. Skewis concluded that Walker had "the ability to do simple work with limited public contact."  AR 83.  Dr. Paglini concluded the same, and added that Mr. Walker's "ability to maintain concentration and attention sufficient to carry out complex and detailed instructions" was only "slightly impaired," and "ability to carry out detailed simple instructions" was "cognitively intact."  AR 340–41.  The ALJ adopted these findings in Walker's RFC assessment.  The RFC assessment language is analogous to both Level 1 and Level 2 jobs because the ALJ addressed the question of Mr. Walker's ability to carry out both simple and detailed (though uninvolved) instructions.  Dr. Generaux testified Mr. Walker was capable of working in one Level 3 occupation (janitor) that may be beyond Plaintiff's RFC as explained in *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (finding "an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning").  However, this error was harmless because the two other jobs she identified were enough to support the ALJ's decision.  *See, e.g.*, *Lara v. Astrue*, 305 Fed. Appx. 324, 326 (9th Cir. 2008).  Accordingly, the Court finds that the ALJ properly relied on Dr. Generaux's testimony, which directed a finding that Mr. Walker could perform jobs that exist in significant numbers in the national economy considering his age, education, work experience, and RFC.  A finding of "not disabled" was therefore supported by substantial evidence.

## CONCLUSION

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole.  It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record as a whole, and resolve conflicts in the evidence and differences of opinion.  Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g).

For all of the foregoing reasons,

/ / /

/ / /

1

2      **IT IS RECOMMENDED:**

3      1.      Plaintiff Gregory E. Walker's Motion to Reverse/Remand (Dkt. #15) be

4              DENIED.

5      2.      The Commissioner's Cross-Motion to Affirm (Dkt. #18) be GRANTED.

6      3.      The Clerk of Court be instructed to enter judgment accordingly and close this

7              case.

8      Dated this 26th day of April, 2016.

9

10

11     PEGGY A. LEEN
       UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28